**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
ELISA PINEDA (SBN 328285)
*elisa@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM BENTE, individually and on behalf of all others similarly situated and the general public,<br><br>                    Plaintiff,<br><br>          v.<br><br>UKG, INC.,<br><br>                    Defendant. | Case No:  **'22 CV289  GPC WVG**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ADAM BENTE ("Plaintiff"), individually and on behalf of all others similarly situated and the general public, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendant UKG, Inc. ("UKG" or "Defendant") to, without limitation, obtain actual and exemplary damages, injunctive relief, restitution, and obtain a declaration that Defendant's actions were unlawful as further set forth below. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and on information and belief as to all other matters, including, *inter alia*, any investigation conducted by and through his attorneys:

## **INTRODUCTION**

1.     Plaintiff brings this class action against UKG for its failure to implement and maintain reasonable security procedures and practices with respect to the sensitive and confidential personal information UKG obtains from its customers' employees; the consequent data breach of its systems that began in December of 2021; and the resultant shut down of payroll services that is ongoing as of the filing of this Class Action Complaint.

2.     UKG is one of the world's biggest workforce management software companies. The company collects, stores, and processes data for thousands of companies and millions of workers. UKG's clients broadly range between corporate and public organizations, including the likes of PepsiCo, Tesla, GameStop, the University of California system, the County of Santa Clara, and many private and public hospital and healthcare organizations.

3.     As a result of its lack of adequate security measures, UKG was attacked by hackers who launched a ransomware attack on UKG's timekeeping system, Kronos Private Cloud, on or around December 11, 2021.

4.     The data breach exposed millions of workers' sensitive and confidential personal identifying information ("PII") to cybercriminals.

5.     To make matters worse, the attack also crippled timekeeping and

1  payroll systems, resulting in workers not being paid, being paid late, or being paid
2  incorrectly.

3        6.     The timing of the data breach could not have come at a worse time,
4  leaving many employees to worry over their privacy and paychecks during the peak
5  of the holiday season as well as the latest surge of the COVID-19 pandemic.

6        7.     Many of the affected organizations include hospitals and healthcare
7  systems, including Plaintiff's employer, Family Health Centers of San Diego
8  ("FHCSD"), a nonprofit clinic provider of health care dedicated to providing
9  affordable health care and support services.

10        8.     FHCSD provides care to over 227,000 patients each year, of whom 91%
11  are low income and 29% are uninsured. FHCSD is one of the largest community
12  clinic providers in the nation, operating 58 clinics across San Diego County.

13        9.     As a result of UKG's payroll services going offline, all FHCSD
14  employees were delayed payment of their paychecks.

15        10.    All FHBCSD employees were forced to find alternative sources of
16  income to pay their bills, mortgages, and necessities, again during the midst of the
17  holiday season.

18        11.    Even after FHCSD got around to distributing paychecks to its
19  employees, many FHCSD employees were either paid inaccurately and/or not at all.

20        12.    In the months following the data breach, all FHCSD employees have
21  had to invest significant time and expense into determining the amount of any unpaid
22  wages, bonuses, and/or paid time off.

23        13.    In addition to their paychecks being affected, Plaintiff's and all FHCSD
24  employees' sensitive and confidential PII was obtained by unauthorized hackers and
25  sold on the dark web. As a result, FHCSD employees not only have to deal with the
26  loss of wages and the resulting consequences, but also have had to invest time and
27  money into securing their personal and financial information.

28        14.    Plaintiff brings this class action to redress these injuries, on behalf of

2

1  himself and on behalf of individuals similarly situated and the general public.

2  **PARTIES**

3  15.    Plaintiff Adam Bente is a citizen and resident of the State of California.

4  Plaintiff is an employee of Family Health Centers of San Diego. Plaintiff has been

5  employed by FHCSD as a business analyst since 2017.

6  16.    Defendant UKG, Inc. is a corporation formed under the laws of the

7  State of Delaware, with dual corporate headquarters in Weston, Florida and Lowell,

8  Massachusetts.

9  **JURISDICTION AND VENUE**

10  17.    This Court has subject matter jurisdiction over this action pursuant to

11  28 U.S.C. § 1332(d), because at least one member of the Class, as defined below is

12  a citizen of a different state than UKG, there are more than 100 members of the

13  Classes, and the aggregate amount in controversy exceeds $5,000,000, exclusive of

14  interests and costs.

15  18.    The Court has general personal jurisdiction over UKG because, at all

16  relevant times, UKG has had systematic and continuous contacts with the State of

17  California. UKG is registered to do business in California with the California

18  Secretary of State under entity number C2111426. UKG regularly contracts with a

19  multitude of businesses and organizations in California to provide continuous and

20  ongoing human resource services, including timekeeping and payroll services.

21  19.    This Court has specific personal jurisdiction over UKG because

22  Plaintiff's claims arise from UKG's specific contacts with the State of California –

23  namely, UKG's provision of payroll and other human resource services to a

24  multitude of companies in California, UKG's failure to implement and maintain

25  reasonable security procedures and practices with respect to that data, and the

26  consequent connection with such services.

27  20.    Venue is proper in this Southern District of California pursuant to 28

28  U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this

3

District.

## FACTUAL ALLEGATIONS

21.     UKG Inc. (an acronym for Ultimate Kronos Group) is a workforce management software company that provides human resource services, including timekeeping and payroll services, to companies across the globe. Among the many products and services that it offers, UKG provides software known as the "Kronos Private Cloud" and "UKG Workforce Central," which are timekeeping and payroll services.

22.     UKG was formed as a result of a $22 billion merger in 2020 between Ultimate Software and Kronos. The company has 13,000 employees across the globe, and amidst a global pandemic, was able to generate over $3 billion in revenue in its first year of business. It is one of the largest cloud computing companies in the world and a leading global provider of workforce management services.

23.     UKG provides its timekeeping and payroll services to a multitude of companies and organizations, including many that operate in California, the like of which include but are not limited to, PepsiCo, Tesla, GameStop, the University of California system, the County of Santa Clara, and many private and public hospital and healthcare organizations, including FHCSD. UKG provides timekeeping and payroll services to thousands of employers.

24.     In connection with those services, UKG collects, stores, and processes sensitive personal data for thousands of companies and millions of workers. Prior to the data breach, UKG had enacted a privacy notice in which it states UKG collects PII of individuals from a variety of sources, including directly from its customers and their employees. The privacy notice contains a section entitled "Customers' Information [and the Information of Their Employees and Job Applicants]", which states that UKG collects data including, but not limited to "name, company name, address, email address, time and attendance and schedule information, and Social Security Numbers." *See* **Exhibit 1** [UKG privacy notice]. Source:

https://www.ukg.com/privacy.

25.    UKG also collects banking information in connection with its provision of direct deposit payroll processes as well as employee identification numbers. For example, under "Use of Personal Information", under the subsection titled "Customers' Information (and the Information of Their Employees)," UKG's privacy notice states UKG uses the PII of its customers' employees to provide its customers with services. *See* **Exhibit 1.**

26.    UKG's website indicates that its services, among other things, allows its customers to ensure accurate, on-time pay and to quickly generate payroll documents, such as paychecks and direct-deposit files.

27.    On December 13, 2021, UKG posted an announcement regarding the data breach on its website. The announcement confirmed that that a ransomware attack was made on UKG's Kronos Private Cloud. The Kronos Private Cloud includes Defendant's UKG Workforce Central, UKG TeleStaff, Healthcare Extensions, and Banking Scheduling Solutions. UKG further claimed that the data breach did not affect UKG Pro, UKG Ready, UKG Dimensions, or any other UKG product or solutions. Defendant confirmed that as a result of the attack, Kronos Private Cloud solutions was offline.

28.    UKG advised its customers "that it may take up to several weeks to restore system availability," and that as such, the company "strongly recommends that [customers] evaluate and implement alternative business continuity protocols related to the affected UKG solutions."[1]

29.    On December 17, 2021, Defendant then posted on its website "New Questions & Answers for Impacted and Non-Impacted Customers" that, among

---

[1] UKG Workforce Central – Leo Daley, *Communications sent to impacted Kronos Private Cloud (KPC) customers beginning December, 13 at 12:45AM ET*, UKG, https://community.kronos.com/s/feed/0D54M00004wJKHiSAO?language=en_US (last visited Mar. 4, 2022).

other things, stated the following question and answer:

**Precisely what information was accessed or exposed?**
Our investigation is ongoing and we are working diligently to
determine if customer data has been compromised.[2]

30.    On December 28, 2021, UKG finally acknowledged the potential
exposure of sensitive employee PII as follows:

Regarding data exfiltration - our investigation is still ongoing and we
are working diligently with cybersecurity experts to determine whether
and to what extent sensitive customer or employee data has been
compromised. As is typical in ransomware incidents, it may take
several more weeks or more to fully determine whether a specific
customer's sensitive data (and what kind of data) may have
been compromised. If we learn that sensitive customer business data
and/or employee data (PII) was exposed because of this attack, we will
meet any obligations we have to inform affected customers and take
appropriate steps to protect affected individuals.[3]

31.    On January 22, 2022, UKG posted an update to its website stating that
"[b]etween January 4 and January 22, **all** affected customers in the Kronos Private
Cloud were restored with safe and secure access to their core time, scheduling, and
HR/payroll capabilities. We are now focused on the restoration of supplemental
features and non-production environments and are extraordinarily grateful for the
patience and partnership our customers have shown."[4]

32.    UKG's carefully worded announcement failed to clarify that UKG's

---

[2] *New Questions & Answers for Impacted and Non-Impacted Customers as of 12/17/2021 at 2:30pm ET*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022).
[3] *Status Update as of Dec 28, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022).
[4] *Status Update as of Jan 22, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022) (emphasis in original).

payroll services were still **not** fully operational, and as a result, many FHCSD employees' paychecks continued to be paid late, inaccurately, and/or not at all.

33.    UKG confirmed as such on February 11, 2022, when it announced that only the first phase of the restoration process was complete and that many of Kronos Private Cloud applications, such as Citrix, Workforce Analytics, and non-production environments, were still offline.[5]

34.    The February 11, 2022, announcement went on to state that UKG had discovered and notified customers whose personal data of its employees "was exfiltrated."[6]

35.    UKG claimed the theft of personal data was contained to employees of only two of its customers, however, in the same announcement, UKG admits its forensic investigation is still ongoing.[7]

36.    The announcement provided a link for use only by its customers to obtain further information on UKG's investigation and security practices.[8] Upon information and belief, this information was not shared with the employees of UKG's customers who were affected by the data breach.

37.    As of the filing of this complaint, news sources have confirmed that PUMA North America, Inc. ("Puma") is one of the affected customers. A data breach notification submitted by Puma to the Office of the State Attorney General of Maine states the personal data of over 6,632 individuals was stolen in the attack on UKG's Kronos Private Cloud software.[9]

38.    A sample notification letter to affected employees of Puma from UKG

---

[5] *Status Update as of Feb 11, 2022*, UKG, https://www.ukg.com/KPCupdates/Archive (last visited Mar. 4, 2022).

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] Data Breach Notifications, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/10394643-6f4e-49ff-884a-9977602932a9.shtml (last visited Mar. 4, 2022).

CLASS ACTION COMPLAINT

again confirms that UKG's investigation is still ongoing, and that up to now, UKG can only confirm "that a malicious actor or actors accessed the cloud-based environment earlier in 2021 [and] stole data from that environment and encrypted the environment." Under a section titled **"What Information Was Involved?"**, the sample letter states "[t]he personal information involved included your [Extra2]" but does not state what information was stolen.[10]

39.    To date, UKG has not confirmed what information was stolen.

40.    Online sources indicate that PepsiCo employees' PII was also stolen during the data breach. PepsiCo employees impacted by the breach have reported hacking of their banking information in the weeks following the breach. Furthermore, Twitter users have likewise reported that as a result of the UKG security breach, hackers obtained workers' phone numbers and began phishing scams. For example, on December 26, 2021, at 1:58 P.M., Twitter user @_genosis_ tweeted: "For all those who have been affected by the Kronos hack please be aware of this. They have already managed to scam a couple hundred employees from another company so be on the look out!" That twitter user posted an image of a text chain stating:

> Hey Team just a heads up. My sister in law is the HR director [for] Gatorade. They too have been hit by the KRONOS outage. She let me know yesterday that the people that hacked kronos did in fact get employee phone #'s and names. They are now calling PepsiCo/Gatorade employees and saying their work for kronos and are calling to verify employee info. They have managed to scam a couple hundred employees already. Make sure your teams [know] that there is ZERO reason anyone would ever call them and [ask] for their info.

---

[10]    UKG Sample Data Breach Notification Letter, file:///C:/Users/elisa/Downloads/EXPERIAN_H4870_UKG-Puma_L03_Proof%20Multi%20and%20L04_Dep%20Multi.pdf (last visited Mar. 4, 2022).

41.     Upon information and belief, the hackers responsible for the data breach stole the PII of all employees of UKG's customers.

42.     UKG's website provides the following with regard to its Kronos Private Cloud software: "At Kronos, data security is a top priority. Our Chief Information Security Officer is the designated management representative responsible for implementing policies and procedures to protect and safeguard our customers' workforce data."[11]

43.     Upon information and belief, UKG's Chief Information Security Officer is John McGregor.

44.     The FBI created a technical guidance document for Chief Information Officers and Chief Information Security Officers that complies already existing federal government and private industry best practices and mitigation strategies to prevent and respond to ransomware attacks. The document is titled *How to Protect Your Networks from Ransomware* and states that on average, more than 4,000 ransomware attacks have occurred daily since January 1, 2016. Yet, there are very effective prevention and response actions that can significantly mitigate the risks.[12]

45.     Preventative measure include:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

---

[11] *Security: Kronos private cloud security and workforce ready reliability*, KRONOS, https://www.kronos.com/security (last visited Mar. 4, 2022).
[12] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last viewed Mar. 2, 2022).

9

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[13]

46.    UKG could have prevented the data breach by properly utilizing best practices as advised by the federal government.

---

[13] *Id.*

CLASS ACTION COMPLAINT

47.     UKG's failure to safeguard the PII of employees of Defendant's customers is exacerbated by the repeated warnings and alerts from public and private institutions, including the federal government, directed to protecting and securing sensitive data. Experts studying cyber security routinely identify companies such as UKG that collect, process, and store massive amounts of data on cloud-based systems as being particularly vulnerable to cyberattacks because of the value of the PII that they collect and maintain. Accordingly, UKG knew or should have known that it was a prime target for hackers.

48.     According to the 2021 Thales Global Cloud Security Study, more than 40% of organizations experienced a cloud-based data breach in the previous 12 months. Yet, despite these incidents, the study found that nearly 83% of cloud-based businesses still fail to encrypt half of the sensitive data they store in the cloud.[14]

49.     Upon information and belief, Kronos did not encrypt Plaintiff's and Class Members' PII involved in the data breach.

50.     Defendant's knowledge that it was a target of hackers is further underscored by the massive number of ransomware attacks on payroll companies such as UKG.

51.     This past November, Frontier Software, a payroll software, experienced a ransomware attack that compromised the sensitive information of between 38,000 to 80,000 South Australian government employees.[15]

52.     In March of 2021, PrismHR, a Massachusetts-based payroll company that services over 80,000 organizations, suffered a massive outage after suffering a

---

[14] Maria Henriquez, *40% of organizations have suffered a cloud-based data breach*, SECURITY, Oct. 29, 2021, https://www.securitymagazine.com/articles/96412-40-of-organizations-have-suffered-a-cloud-based-data-breach (last visited Mar. 4, 2022).
[15] Emily Kuhnert, *Payroll Security Breaches,* PAPAYAGLOBAL, Feb. 27, 2020, https://papayaglobal.com/blog/list-of-payroll-security-breaches/, (last visited Mar. 4, 2022).

CLASS ACTION COMPLAINT

cyberattack on its payroll cloud-based system.[16]

53.    In January of 2021, 6,000 employees' PII was stolen during a ransomware attack on Arup's, a UK-based third-party payroll provider.[17]

54.    In May of 2020, Interserver, a payroll vendor for Britain's Ministry of Defense, was hacked. The hackers obtained the sensitive information of up to 100,000 past and current employees.[18]

55.    In February of 2020, the Phoenix Pay System fell prey to a data breach exposing the PII of more than 69,000 Canadian federal employees.[19]

56.    Despite knowing the prevalence of data breaches, UKG failed to prioritize data security by adopting reasonable data security measures to prevent and detect unauthorized access to its highly sensitive systems and databases. UKG has the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized breaches. UKG failed to undertake adequate analyses and testing of its own systems, training of its own personnel, and other data security measures to ensure vulnerabilities were avoided or remedied and that Plaintiff's and Class Members' data were protected.

57.    As of the date of this Complaint — nearly two months after the breach — UKG's systems remain disabled, its systems remain unsecured, and the harm resulting from the data breach remains unrectified.

## PLAINTIFF'S ALLEGATIONS

58.    Plaintiff has worked as a business analyst for the Family Health Centers

---

[16] Lawrence Abrams, *Payroll giant PrismHR outage likely caused by ransomware attack*, Bleeping Computer, Mar. 2, 2021, https://www.bleepingcomputer.com/news/security/payroll-giant-prismhr-outage-likely-caused-by-ransomware-attack/, (last visited Mar. 4, 2022).
[17] *Id.*
[18] Emily Kuhnert, *Payroll Security Breaches,* PAPAYAGLOBAL, Feb. 27, 2020, https://papayaglobal.com/blog/list-of-payroll-security-breaches/, (last visited Mar. 4, 2022).
[19] *Id.*

of San Diego since 2017. Plaintiff's responsibilities include reviewing and reporting data to obtain government grants necessary to FHCSD's mission of providing affordable health care services to low-income individuals in the San Diego community. FHCSD is the nation's tenth largest health center with more than 1,800 dedicated employees.

59.    FHCSD uses Kronos Privates Cloud to process payroll. On December 12, 2021, FHCSD notified its employees that as a result of a malware attack on UKG's system, FHCSD's payroll software was offline. As a direct and foreseeable result of UKG's negligent failure to implement and maintain reasonable data security procedures and practices and the resultant breach of its systems, FHCSD's timekeeping and payroll systems became crippled and remained completely offline for weeks following the data breach. FHCSD lacked an adequate contingency plan to accurately pay workers and was forced to switch to manually inputting payroll.

60.    On December 13, 2021, FHCSD notified its employees that employees would need to maintain and submit "manual timesheets" for time worked following the data breach. FHCSD further instructed it employees that for payroll accumulated before December 10, 2021, FHCSD would need to utilize employees' employment status to process payroll. FHCSD instructed employees who had concerns with this method of calculating payroll to contact FHCSD.

61.    Plaintiff, like all Class Members, was delayed payment of his paycheck following the data breach. Following the data breach, Plaintiff's payroll was scheduled to be processed by December 17, 2021. The resultant shutdown of UKG's payroll services caused each FHCSD employee, including Plaintiff, to not receive their paycheck until after Christmas. Plaintiff and Class Members had to endure weeks without payment while working during the Omicron surge in the midst of the holiday season.

62.    Plaintiff, like all Class Members, has lost time and expenses from having to mitigate the consequences of the delay in payment of his paychecks.

CLASS ACTION COMPLAINT

63.     Plaintiff, like all Class Members, also had his PII, including but not limited to his name, company name, address, email address, time and attendance and schedule information, and Social Security Number, exposed as a result of UKG's negligent failure to safekeep his information.

64.     As a direct and foreseeable result of UKG's negligent failure to implement and maintain reasonable data security procedures and practices and the resultant breach of its systems, Plaintiff and Class Members also suffered harm in that their sensitive PII has been exposed to cybercriminals and they now have an increased risk and fear of identity theft and fraud.

65.     Since the data breach, Plaintiff has received on average, per day 5-6 spam calls to his cell phone and countless spam e-mails. Further, shortly after the data breach, Plaintiff received a notification from his credit card company that his Social Security number had been discovered on the dark web. Upon information and belief, Plaintiff's Social Security number, cell phone number and e-mail address were exfiltrated by the hackers who obtained unauthorized access to Plaintiff's and Class Members' PII.

66.     Social Security numbers are among the most sensitive kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity

14

can cause a lot of problems.[20]

67.     Accordingly, Plaintiff and Class Members have suffered harm in the form of increased fear and risk of identity theft and fraud resulting from the data breach.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff seeks to represent the following Classes:

**Nationwide Data Breach Class:** All United States citizens whose personal information was exposed as a result of the Kronos Data Breach.

**California Data Breach Subclass:** All California residents whose personal information was exposed as a result of the Kronos Data Breach

**Nationwide Payroll Class:** All United States citizens whose paychecks were paid late, inaccurately, and/or not at all as a result of the Kronos Data Breach.

**California Payroll Subclass:** All California residents whose paychecks were paid late, inaccurately, and/or not at all as a result of the Kronos Data Breach.

69.     Excluded from the Classes is Defendant and its subsidiaries and affiliates; all employees of Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; Plaintiff's counsel and UKG's counsel and members of their immediate families; government entities; and the judge to whom this case is assigned, including his/her immediate family and court staff.

---

[20] *Identity Theft and Your Social Security Number*, SOCIAL SECURITY ADMINISTRATION, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/viewer.html?pdfurl=https%3A%2F%2Fwww.ssa.gov%2Fpubs%2FEN-05-10064.pdf&chunk=true (last visited Mar. 4, 2022).

70.     Plaintiff reserves the right to modify, expand or amend the above Class definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

71.     **Numerosity:** The members of the Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are likely hundreds of thousands of members in each Class and Subclass, the precise number of Class Members is unknown to Plaintiff. Class Members may be identified through objective means including Defendant's own records. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

72.     **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a.     Whether Defendants owed a duty to Plaintiff and Class Members to secure and safeguard their PII;

b.     Whether Defendants failed to use reasonable care and reasonable methods to secure and safeguard Plaintiff's and Class Members' PII;

c.     Whether Defendants properly implemented security measures as required by state law and/or industry standards to protect Plaintiff's and Class Members' PII from unauthorized access, capture, dissemination and misuse;

d.     Whether Plaintiff and members of the Class were injured and suffered damages and ascertainable losses as a result of Defendants' actions or failure to act, including but not limited to the exposure of their PII to unauthorized third parties and loss of wages;

e.     Whether Defendants engaged in active misfeasance and misconduct alleged herein;

f.   Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

g.   Whether Defendants' failure to provide adequate security proximately caused Plaintiff's and Class Members' injuries; and

h.   Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

73.   **Typicality:** Plaintiff is a member of the Classes. Plaintiff's claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of his PII and lost wages as a result.

74.   **Adequacy of Representation:** Plaintiff is an adequate Class representative because he is a member of the Classes and his interests do not conflict with the interests of other Class Members that he seeks to represent. Plaintiff is committed to pursuing this matter for the Classes with the Classes' collective best interests in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff, and his counsel, will fairly and adequately protect the Class's interests.

75.   **Predominance and Superiority:** As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Classes' claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against UKG, so it would be impracticable for Class Members to individually seek redress for UKG's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized

17

litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

76.    This class action is also properly brought and should be maintained as a class action because Plaintiff seeks injunctive relief on behalf of each Class on grounds generally applicable to each Class. Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e., Defendants failed to reasonably protect Plaintiff and Class Members' PII from unauthorized third-party hackers). Thus, any injunctive relief or declaratory relief would benefit the Class as a whole.

77.    Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

**CLAIMS FOR RELIEF**

**COUNT I**

**NEGLIGENCE**

**(On Behalf of all Classes)**

78.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

79.    Given the highly sensitive nature of the PII UKG collects from its employees and the likelihood of harm resulting from its unauthorized access, acquisition, use, or disclosure, UKG owes Plaintiff and Class Members a duty to exercise reasonable care in protecting this information. This duty includes implementing and maintaining reasonable security procedures and practices appropriate to the nature of the PII that were compliant with and/or better than industry-standard practices. UKG's duties included a duty to design, maintain, and

18

test its security systems to ensure that Plaintiff's and Class Members' PII was adequately secured and protected, to implement processes that would detect a breach of its security system in a timely manner, to timely act upon warnings and alerts, including those generated by its own security systems regarding intrusions to its networks, and to promptly, properly, and fully notify its customers, Plaintiff, and Class Members of any data breach.

80.   It was foreseeable to UKG that a failure to use reasonable measures to protect the highly sensitive and confidential information of its customers' employees could result in injury to said employees.

81.   Actual and attempted breaches of data security were reasonably foreseeable to UKG given that other payroll companies had recently been breached before as well as the known frequency of data breaches and various warnings from industry experts.

82.   In connection with the conduct described above, UKG acted wantonly, recklessly, and with complete disregard for the consequences Plaintiff and Class Members would suffer if their highly sensitive and confidential PII, including but not limited to name, company name, address, email address, time and attendance and schedule information, and Social Security Numbers, was accessed by unauthorized third parties.

83.   UKG had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but UKG also knew that it was more likely than not Plaintiff and other Class Members would be harmed.

84.   UKG's duty also arose under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII by companies such as UKG.

85. Various FTC publications and data security breach orders further form the basis of UKG's duty. According to the FTC, the need for data security should be factored into all business decision making.[21]

86. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[22] Among other things, the guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach. Additionally, the FTC recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.

87. UKG's duty also arose from its unique position as one of the largest cloud computing companies in the world whose services constitute a linchpin of the payroll services of a substantial fraction of the nation. As set forth above, the data

---

[21] *Start with Security, A Guide for Business*, FTC (June 2015), https://www.ftc.gov/tips-advice/business-center/guidance/start-security-guide-business.
[22] *Protecting Personal Information, A Guide for Business*, FTC (Oct. 2016), https://www.ftc.com/system/files/documents/plain-language/pdf-0136_proteting-personal-informaiton.pdf.

breach herein affected thousands of companies and millions of employees. UKG undertakes its collection of sensitive PII of employees generally through direct relationships between UKG and employers, generally without the direct consent of employees who have no option but to be affected by UKG's actions. Plaintiff and Class Members cannot "opt out" of UKG"s activities. UKG holds itself out as a trusted steward of consumer and employee data, and thereby assumed a duty to reasonably protect that data. Plaintiff and Class Members, and indeed the general public, collectively repose a trust and confidence in UKG to perform that stewardship carefully. Otherwise consumers and employees would be powerless to fully protect their interests regarding their PII, which is controlled by UKG. Because of its crucial role within the payroll system, UKG was in a unique and superior position to protect against the harm suffered by Plaintiff and Class Members as a result of the UKG data breach. By obtaining, collecting, using, and deriving a benefit from Plaintiff' and Class Members' PII, UKG assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff' and Class Members' PII from disclosure.

88.    UKG admits that it has an enormous responsibility to protect employee data, that it is entrusted with this data, and that it did not live up to its responsibilities to protect the PII at issue here.

89.    UKG's privacy policy has a specific "Security" section which states:

> To prevent unauthorized access or disclosure, to maintain data accuracy, and to allow only the appropriate use of your PII, UKG utilizes physical, technical, and administrative controls and procedures to safeguard the information we collect.

> To protect the confidentiality, integrity, availability and resilience of your PII, we utilize a variety of physical and logical access controls, firewalls, intrusion detection/prevention systems, network and database monitoring, anti-virus, and backup systems. We use encrypted sessions when collecting or transferring sensitive data through our websites.

> We limit access to your PII and data to those persons who have a specific business purpose for maintaining and processing such information. Our employees who have been granted access to your PII are made aware of their responsibilities to protect the confidentiality, integrity, and availability of that information and have been provided training and instruction on how to do so.

90.     UKG also had a duty to safeguard the PII of Plaintiff and Class Members and to promptly notify them and their employers of a breach because of state laws and statutes that require UKG to reasonably safeguard PII, as detailed herein, including Cal. Civ. Code § 1798.80 *et seq.*

91.     Timely notification was required, appropriate, and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, cancel or change usernames or passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, develop alternative timekeeping methods or other tacks to avoid untimely or inaccurate wage payments, and take other steps to mitigate or ameliorate the damages caused by UKG's misconduct.

92.     UKG also owed a duty to Plaintiff and Class Members to exercise reasonable care to avoid sudden disruption of their human resources services, including their timekeeping and payroll services. UKG undertook of its own volition responsibility to provide continuous and ongoing timekeeping and payroll services to the employers of Plaintiff and Class Members, knowing that such services were for the benefit of making timely wage payments to them, among other things, and that any disruption, particularly any sudden disruption, would cause Plaintiff and Class Members harm.

93.     UKG breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. UKG breached these duties by, among other

22

things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiff and Class Members; (b) prevent the breach; (c) detect the breach while it was ongoing; (d) maintain security systems consistent with industry standards and necessary to avoid the disabling of payroll systems for thousands of companies and millions of workers; (e) disclose that Plaintiff's and Class Members' PII in UKG's possession had been or was reasonably believed to have been stolen or compromised; and (f) avoid disruption and continued disruption of its timekeeping and payroll services.

94.    UKG knew or should have known of the risks of collecting and storing PII and the importance of maintaining secure systems, especially in light of the increasing frequency of ransomware attacks on payroll vendors such as UKG.

95.    Through UKG's acts and omissions described in this Complaint, including UKG's failure to provide adequate security and its failure to protect the PII of Plaintiff and Class Members from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, UKG unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' PII. UKG further failed to timely and accurately disclose to customers, Plaintiff, and Class Members that their PII had been improperly acquired or accessed and was available for sale to criminals on the dark web. Indeed, Plaintiff and Class Members received no notice of the breach directly from UKG. UKG issued a public statement and in some instances issued notices to its customers (the employers of Plaintiff and Class Members) but failed to adequately describe all types of PII that were exfiltrated, stolen, disclosed, or accessed by the ransomware attackers.

96.    UKG further breached its duty to Plaintiff and Class Members to exercise reasonable care to avoid sudden disruption of their human resources services, including their timekeeping and payroll services, by allowing its systems to remain disabled for multiple weeks (and counting) and failing to adequately and timely remedy its security vulnerabilities.

23

97.    But for UKG's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised nor their timekeeping and payroll services disabled.

98.    As a direct and proximate result of UKG's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial. As a result of UKG's failure to protect Plaintiff's and Class Members' PII, Plaintiff's and Class Members' PII has been accessed by malicious cybercriminals.

99.    Plaintiff's and the Class Members' injuries include:

a. damages stemming from Plaintiff and Class Members not being fully paid for all time worked, not being paid overtime, being provided inaccurate wage statements or no wage statements at all, not being provided meal and rest breaks or compensation in lieu thereof, all in violation of federal and state laws;

b. damages stemming from the fear and anxiety of Plaintiff and Class Members concerning whether they would be fully, timely, and accurately paid for all time worked during the 2021-2022 holiday season, and regarding how long such disruptions to their payroll systems would continue;

c. theft of their PII;

d. costs associated with requested credit freezes;

e. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

f. costs associated with purchasing credit monitoring and identity theft protection services;

g. unauthorized charges and loss of use of and access to their financial account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were

permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

h. lowered credit scores resulting from credit inquiries following fraudulent activities;

i. costs associated with time spent and loss of productivity from taking time to address and attempting to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

j. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

k. damages to and diminution of value of their PII entrusted, directly or indirectly, to UKG with the mutual understanding that UKG would safeguard Plaintiff' and the Class Members' data against theft and not allow access and misuse of their data by others;

l. continued risk of exposure to hackers and thieves of their PII, which remains in UKG's possession and is subject to further breaches so long as UKG fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members;

m. loss of the inherent value of their PII;

n. and other significant additional risks of identity theft, financial fraud, and other identity-related fraud in the indefinite future.

## COUNT II

### UNJUST ENRICHMENT

**(On behalf of all Classes)**

25

100.   Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

101.   Plaintiff and Class Members have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by UGK and that was ultimately converted, stolen, removed, deleted, exfiltrated, or disclosed in the UKG data breach. This PII was conferred on UKG in most cases by third parties, Class Members' employers, but in some instances directly by Plaintiff and Class Members themselves.

102.   UKG was benefitted by the conferral upon it of the PII pertaining to Plaintiff and Class Members and by its ability to retain and use that information. UKG understood that it was in fact so benefitted.

103.   UKG also understood and appreciated that the PII pertaining to Plaintiff and Class Members was private and confidential, and its value depended upon UKG maintaining the privacy, security, and confidentiality of that PII.

104.   But for UKG's willingness and commitment to maintain its privacy, security, and confidentiality, that PII would not have been transferred to and entrusted with UKG. Further, if UKG has disclosed that its data security measures were inadequate, UKG would not have been permitted to continue in operation by regulators, its shareholders, and participants in the marketplace.

105.   As a result of UKG's wrongful conduct as alleged in this Complaint (including among other things its failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct in facilitating the theft of that PII), UKG has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members. Among other things, UKG has and continues to benefit and profit from the sale of the PII and from its contracts to use that PII to process timekeeping and payroll, while the value to Plaintiff and Class Members has been diminished.

106.   UKG's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

107.   Under the common law doctrine of unjust enrichment, it is inequitable for UKG to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class Members in an unfair and unconscionable manner. UKG's retention of such benefits under circumstances making such retention inequitable constitutes unjust enrichment.

108.   The benefit conferred upon, received, and enjoyed by UKG was not conferred officiously or gratuitously, and it would be inequitable and unjust for UKG to retain the benefit.

109.   UKG is therefore liable to Plaintiff and Class Members for restitution in the amount of the benefit conferred on UKG as a result of its wrongful conduct, including specifically the value to UKG of the PII that was stolen and the payroll systems that were compromised in the UKG data breach and the profits UKG is receiving from the use, sale, and processing of that information, including any profits from its timekeeping and payroll services.

## COUNT III

### BREACH OF CONTRACT

**(On behalf of all Nationwide and California Data Breach Class and Subclass)**

110.   Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

111.   UKG's privacy policy is an agreement between UKG and its customers as well as the employees of its customers, who include Plaintiff and Class Members, and who provided their PII to UKG.

112.   This privacy policy applied to Plaintiff and Class Members who

accepted UKG's promise and entered into a contract with UKG when they entrusted their highly sensitive and confidential e-PHI to UKG as part of a transaction for medical goods and services.

113. Plaintiff and Class Members are entitled to compensatory and consequential damages as a result of UKG's breach of contract.

### COUNT IV

### COMMON LAW INVASION OF PRIVACY – INTRUSION UPON SECLUSION

**(On behalf of the Nationwide and California Data Breach Class and Subclass)**

114. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

115. To assert claims for intrusion upon seclusion, one must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

116. UKG intentionally intruded upon the solitude, seclusion and private affairs of Plaintiff and Class Members by intentionally configuring their systems in such a way that left them vulnerable to malware/ransomware attack, thus permitting unauthorized access to their systems, which compromised Plaintiff's and Class Members' PII. Only UKG had control over its systems.

117. UKG's conduct is especially egregious and offensive as they failed to have any adequate security measures in place to prevent, track, or detect in a timely fashion unauthorized access to Plaintiff's and Class Members' information.

118. At all times, UKG was aware that Plaintiff's and Class Members' PII in their possession contained highly sensitive and confidential PII, including but not limited to name, company name, address, email address, time and attendance and schedule information, and Social Security Numbers.

119. Plaintiff and Class Members have a reasonable expectation in their e-

PHI, which contains highly sensitive medical information.

120.   UKG intentionally configured their systems in such a way that stored Plaintiff's and Class Members' PII to be left vulnerable to malware/ransomware attack without regard for Plaintiff's and Class Members' privacy interests.

121.   The disclosure of the sensitive and confidential PII of hundreds of thousands of employees, was highly offensive to Plaintiff and Class Members because it violated expectations of privacy that have been established by general social norms, including by granting access to information and data that is private and would not otherwise be disclosed.

122.   UKG's conduct would be highly offensive to a reasonable person in that it violated statutory and regulatory protections designed to protect highly sensitive information, in addition to social norms. UKG's conduct would be especially egregious to a reasonable person as UKG publicly disclosed Plaintiff's and Class Members' sensitive and confidential PII, including but not limited to name, company name, address, email address, time and attendance and schedule information, and Social Security Numbers, without their consent, to an "unauthorized person," i.e., hackers.

123.   As a result of UKG's actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

124.   Plaintiff and Class Members have been damaged as a direct and proximate result of UKG's intrusion upon seclusion and are entitled to just compensation.

125.   Plaintiff and Class Members are entitled to appropriate relief, including compensatory damages for the harm to their privacy, loss of valuable rights and protections, and heightened risk of future invasions of privacy.

## COUNT V

## INVASION OF PRIVACY

29

**ART. I, SEC 1 OF THE CALIFORNIA CONSTITUTION**

**(On behalf of the Nationwide and California Data Breach Class and Subclass)**

126.   Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

127.   Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I, § 1, Cal. Const.

128.   The right to privacy in California's constitution creates a private right of action against private and government entities.

129.   To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

130.   UKG violated Plaintiff's and Class Members' constitutional right to privacy by collecting, storing, and disclosing their PII in which they had a legally protected privacy interest, and in which they had a reasonable expectation of privacy in, in a manner that was highly offensive to Plaintiff and Class Members, would be highly offensive to a reasonable person, and was an egregious violation of social norms.

131.   UKG has intruded upon Plaintiff's and Class Members' legally protected privacy interests, including interests in precluding the dissemination or misuse of their confidential PII.

132.   UKG's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely the misuse of information gathered for an improper purpose; and (ii) the invasion deprived

Plaintiff and Class Members of the ability to control the circulation of their PII, which is considered fundamental to the right to privacy.

133.   Plaintiff and Class Members had a reasonable expectation of privacy in that: (i) UKG's invasion of privacy occurred as a result of UKG's security practices including the collecting, storage, and unauthorized disclosure of its customers' employees' PII; (ii) Plaintiff and Class Members did not consent or otherwise authorize UKG to disclosure their PII; and (iii) Plaintiff and Class Members could not reasonably expect UKG would commit acts in violation of laws protecting privacy.

134.   As a result of UKG's actions, Plaintiff and Class Members have been damaged as a direct and proximate result of UKG's invasion of their privacy and are entitled to just compensation.

135.   Plaintiff and Class Members suffered actual and concrete injury as a result of UKG's violations of their privacy interests. Plaintiff and Class Members are entitled to appropriate relief, including damages to compensate them for the harm to their privacy interests, loss of valuable rights and protections, heightened risk of future invasions of privacy, and the mental and emotional distress and harm to human dignity interests caused by Defendant's invasions.

136.   Plaintiff and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class Members for the harm to their privacy interests as well as disgorgement of profits made by UKG as a result of its intrusions upon Plaintiff's and Class Members' privacy.

## **COUNT VI**

**Violation of the California Consumer Privacy Act, Cal. Civ. Code §§1798.100 _et seq._)**

**(On behalf of the California Data Breach Subclass)**

137.   Plaintiff re-alleges and incorporates by reference all preceding

31

allegations as if fully set forth herein.

138.   The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted PII, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

> (B) Injunctive or declaratory relief.

> (C) Any other relief the court deems proper.

139.   UKG is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million. Indeed, its revenue reaches into the many billions per year.

140.   Plaintiff and Class Members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

141.   The PII of Plaintiff and Class Members at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the PII UKG collects and which was impacted by the data breach includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport

32

number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

142.   UKG knew or should have known that its computer systems and data security practices were inadequate to safeguard the Plaintiff's and Class Members' PII and that the risk of a data breach or theft was highly likely. UKG failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff and the Class Members. Specifically, UKG subjected Plaintiff's and Class Members' nonencrypted and nonredacted PII to an unauthorized access and exfiltration, theft, or disclosure as a result of the UKG's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

143.   As a direct and proximate result of UKG's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and Class Members' PII included exfiltration, theft, or disclosure through UKG's servers, systems, and website, and/or the dark web, where hackers further disclosed UKG's customers' and their employees' PII.

144.   As a direct and proximate result of UKG's acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to lost wages due to the disabling of their payroll and timekeeping services, the loss of Plaintiff' and the Class Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses described above.

33

145.   Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages." Accordingly, Plaintiff and Class Members by way of this Complaint seek actual pecuniary damages suffered as a result of UKG's violations described herein. Plaintiff has issued a notice of these alleged violations pursuant to § 1798.150(b) and intends to amend this Complaint to seek statutory damages and injunctive relief upon expiration of the 30-day cure period pursuant to § 1798(a)(1)(A)-(B), (a)(2), and (b).

## COUNT VII

**VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT, Cal.**

**Civ. Code §§ 1798.80 et seq.,**

**(On Behalf of the California Data Breach Subclass)**

146.   Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

147.   Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that PII about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain PII about Californians to provide reasonable security for that information."

148.   Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains PII about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the PII from unauthorized access, destruction, use, modification, or disclosure."

149.   Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

150.   Plaintiff and Class Members are "customers" within the meaning of

34

Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided PII to UKG, directly and/or indirectly through their employers, for the purpose of obtaining a service from UKG.

151.   The PII of Plaintiff and Class Members' at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the PII UKG collects and which was impacted by the data breach includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

152.   UKG knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' PII and that the risk of a data breach or theft was highly likely. UKG failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff and Class Members. Specifically, UKG failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the PII of Plaintiff and Class Members from unauthorized access, destruction, use, modification, or disclosure. UKG further subjected Plaintiff's and Class Members' nonencrypted and nonredacted PII to an unauthorized access and exfiltration, theft, or disclosure as a

result of the UKG's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

153.   As a direct and proximate result of UKG's violation of its duty, the unauthorized access, destruction, use, modification, or disclosure of the PII of Plaintiff and the Class Members included hackers' access to, removal, deletion, destruction, use, modification, disabling, disclosure and/or conversion of the PII of Plaintiff and Class Membersby the ransomware attackers and/or additional unauthorized third parties to whom those cybercriminals sold and/or otherwise transmitted the information.

154.   As a direct and proximate result of UKG's acts or omissions, Plaintiff and Class Members were injured and lost money or property, including but not limited to lost wages due to the disabling of their payroll and timekeeping services, the loss of Plaintiff's and Class Members'legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses described above. Plaintiff seeks compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

## COUNT VIII

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200, *et seq.*

#### (On Behalf of the California Data Breach and Payroll Subclasses)

155.   Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

156.   UKG is a "person" as defined by Cal. Bus. & Prof. Code §17201.

157.   UKG violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

158.   UKG's business acts and practices are "unlawful" under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* ("UCL"), because, as

36

1  alleged above, UKG violated the California common law, California Constitution,
2  and the other state and federal statutes and causes of action described herein.

3      159.  UKG's business acts and practices are "unfair" under the UCL,
4  because, as alleged above, California has a strong public policy of protecting
5  individuals' privacy interests, including protecting individuals' personal data. UKG
6  violated this public policy by, among other things, engaging in unfair business
7  practices because it made material misrepresentations and omissions concerning the
8  information that UKG assured patients it would protect their highly sensitive and
9  confidential e-PHI, which deceived and misled patients. UKG's conduct violates the
10  policies of the statutes referenced herein.

11      160.  UKG's business acts and practices are also "unfair" in that they are
12  immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to
13  consumers. The gravity of the harm of UKG's collecting, storing, disclosing, and
14  otherwise misusing Plaintiff's and Class Members' PII is significant, and there is no
15  corresponding benefit resulting from such conduct. Finally, because Plaintiff and
16  Class Members were completely unaware of UKG's conduct, they could not have
17  possibly avoided the harm.

18      161.  UKG's business acts and practices are also "fraudulent" within the
19  meaning of the UCL. UKG misrepresented that it maintained sufficient data security
20  measures and systems to protect Plaintiff's and Class Members' PII. UKG never
21  disclosed that these practices were severely deficient.

22      162.  UKG's unlawful, unfair, and deceptive acts and practices include:

23  (a)  Failing to implement and maintain reasonable security and privacy
24       measures to protect Plaintiff's and Class Members' PII, which was a
25       direct and proximate cause of the data breach and omitting,
26       suppressing, and concealing the material fact of that failure;

27  (b)  Failing to identify foreseeable security and privacy risks, remediate
28       identified security and privacy risks, and adequately improve

1    security and privacy measures following well-publicized

2    cybersecurity incidents, which was a direct and proximate cause of

3    the data breach and omitting, suppressing, and concealing the

4    material fact of that failure;

5    (c)    Failing to comply with common law and statutory duties pertaining

6    to the security and privacy of Plaintiff's and Class Members' PII,

7    including duties imposed by the FTC Act, and CIPA, which was a

8    direct and proximate cause of the data breach and omitting,

9    suppressing, and concealing the material fact of that failure;

10    (d)    Misrepresenting that it would protect the privacy and confidentiality

11    of Plaintiff's and Class Members' PII, including by implementing

12    and maintaining reasonable security measures;

13    (e)    Misrepresenting that it would comply with common law and

14    statutory duties pertaining to the security and privacy of Plaintiff's

15    and Class Members' PII, including duties imposed by the FTC Act

16    and CIPA;

17    (f)    Omitting, suppressing, and concealing the material fact that it did not

18    reasonably or adequately secure Plaintiff's and Class Members' PII;

19    and

20    (g)    Omitting, suppressing, and concealing the material fact that it did not

21    comply with common law and statutory duties pertaining to the

22    security and privacy of Plaintiff's and Class Members' PII, including

23    duties imposed by the FTC Act and CIPA.

24    163.    UKG's representations and omissions were material because they

25    were likely to deceive reasonable consumers about the adequacy of UKG's data

26    security and ability to protect the confidentiality of Plaintiff's and Class Members'

27    PII.

28    164.    As a direct and proximate result of UKG's unfair, unlawful, and

38

fraudulent acts and practices, Plaintiff and Plaintiff's and Class Members were injured and lost money or property, i.e., lost wages, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, as well as the costs passed through from UKG to its customers and their employees for their timekeeping and payroll services; fees and interest incurred as a result of the loss of wages; time and expenses related to tracking the amount of said lost wages; costs to be spent for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII; and an increased, imminent risk of fraud and identity theft.

165.   UKG's violations were, and are, willful, deceptive, unfair, and unconscionable.

166.   Plaintiff and Class Members have lost money and property as a result of UKG's conduct in violation of the UCL, as stated in herein and above.

167.   By deceptively storing, collecting, and disclosing their PII, UKG has taken money or property from Plaintiff and Class Members.

168.   Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including compensatory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT IX

### REQUEST FOR RELIEF UNDER THE DECLARATORY JUDGMENT ACT

### 28 U.S.C. § 2201, *et seq.*

### (On Behalf of all Classes)

169.   Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

170.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the

39

parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

171.   An actual controversy has arisen in the wake of the data breach regarding UKG'S present and prospective common law and statutory duties to reasonably safeguard Plaintiff and Class Members' personal informaiton and whether UKG is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches. Plaintiff alleges that UKG's data security practices remain inadequate.

172.   Plaintiff and Class Members continue to suffer injury as a result of the compromise of PII and remain at imminent risk that further compromises of their PII will occur in the future.

173.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that UKG continues to owe a legal duty to secure consumers' PII, to timely notify Plaintiff and Class Members of any data breach, and to establish and implement data security measures that are adequate to secure Plaintiff and Class Members' PII.

174.   The Court also should issue corresponding prospective injunctive relief requiring UKG to employ adequate security protocols consistent with law and industry standards to protect Plaintiff and Class Members' PII.

175.   If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach at UKG occurs, Plaintiff and Class Members will not have an adequate remedy at law, because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

176.   The hardship to Plaintiff and Class Members if an injunction does not issue greatly exceeds the hardship to UKG if an injunction is issued. If another data

breach occurs at UKG, Plaintiff and Class Members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to UKG of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and UKG has a pre-existing legal obligation to employ such measures.

177.   Issuance of the requested injunction will serve the public interest by preventing another data breach at UKG, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose confidential information would be further compromised.

## **RELIEF REQUESTED**

Plaintiff, on behalf of all others similarly situated, requests that the Court enter judgment against Defendants including the following:

A.   Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B.   Appointing Plaintiff as representative of the applicable Classes and appointing Plaintiff's counsel as Class counsel;

C.   An award to Plaintiff and the Class of compensatory, consequential, nominal, statutory, and treble damages as set forth above;

D.   Ordering injunctive relief requiring Defendants to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide several years of free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify consumers of any future data breaches;

E.   Entering a declaratory judgment stating that Defendants owe a legal duty to secure Plaintiff's and Class Members' PII and data, to timely notify Plaintiff and Class Members of any data breach, and to establish and implement data security measures that are adequate to secure their PII and data;

F.  An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.  An award of pre-judgment and post-judgment interest, as provided by law or equity; and

H.  Such other relief as the Court may allow.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Dated: March 4, 2022

/s/ Ronald A. Marron
Ronald A. Marron (175650)
Alexis M. Wood (270200)
Kas L. Gallucci (288709)
Elisa Pineda (328285)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com
elisa@consumersadvocates.com


*Attorneys for Plaintiff and the Proposed Classes*

42